OPINION
{¶ 1} Plaintiff-appellant, Deborah A. Ripley, appeals from a judgment of the Ohio Court of Claims which found in favor of defendant-appellee, the Ohio Bureau of Employment Services ("OBES"), in this action alleging hostile environment sexual harassment and intentional infliction of emotional distress. For the reasons stated below, we affirm.
 {¶ 2} Appellant was employed by OBES as a secretary in its Findlay office from 1990 until February 1997. Between 1990 and 1997, appellant alleged she had been subjected to numerous instances of sexual harassment by co-workers Ron Clemons and Ernest Dickman. In January 1993, appellant filed a written charge of sexual harassment against Clemons and Dickman, alleging the two men had subjected her to sexual comments, gestures and looks. Ezequiel Gonzalez, the manager of the Findlay office, investigated appellant's complaint, advised Clemons and Dickman to leave appellant alone and to direct their work for her through him. In addition, the entire office attended a sexual harassment training session in which they learned what conduct to avoid and how to register a complaint.
 {¶ 3} In April 1994, after obtaining a 90-day right-to-suit letter from the federal Equal Employment Opportunity Commission, appellant initiated an action in the Hancock County Court of Common Pleas; however, she voluntarily dismissed the action in July 1994. In early 1996, appellant again complained to Gonzalez regarding Clemons, this time about an incident in which Clemons allegedly grabbed his crotch in her presence. According to appellant, Gonzalez called Clemons into his office, but no investigation or further action by management was taken.
 {¶ 4} In February 1997, appellant quit her job. In November 1997, appellant filed this complaint in the Court of Claims, this time alleging that hostile environment sexual harassment, occurring between 1990 and 1997, had caused her job-related stress to the point that she had to quit her job for health reasons.
 {¶ 5} The matter proceeded to trial in October 2002. At trial, various witnesses testified the office atmosphere frequently was characterized by joking and conversation of a sexual nature, and that appellant did not seem to take offense. To the contrary, co-workers observed that appellant was often a willing participant, even an instigator, of sexual conversations; that on several occasions she publicly made comments about her breasts; that she kept a file of sexual jokes and cartoons; and that she made public knowledge of the fact she voluntarily had sexual intercourse with at least two co-workers, one of them being Clemons. In addition, during the period of time she alleged that she was offended by comments and gestures by Dickman, she also accepted gifts from him and permitted him to watch her dog for her while she was away. Although appellant testified that she did not feel her conduct encouraged the behavior of her male co-workers, she admitted she participated in the joke telling and that, on one occasion, she and two female co-workers engaged in an office conversation comparing the size of their breasts. She also admitted to one instance in which a female supervisor had sent her home to change clothes because she had not worn a bra. Appellant described the jokes and cartoons she passed around and kept in a file as "mildly sexual," and "dirty" but not "gross." (Tr. at 314.) She claimed she would tell others when she thought their sexual jokes were inappropriate but that they kept telling them anyway.
 {¶ 6} Appellant testified that the specific conduct she found offensive involved at least one instance in which Dickman had looked at her suggestively and licked his lips, although Dickman, in his testimony, denied a lascivious intent and explained he had a problem with dry lips. Appellant also testified that, upon her divorce, Clemons had solicited sex from her on a daily basis, and that she eventually had sexual intercourse with him on one occasion. She described an instance in which she alleged Dickman had used another employee's cane to lift her skirt. All of these incidents apparently occurred between 1990 and 1993, and were the basis for her initial complaint to Gonzalez regarding Dickman and Clemons. Appellant stated that, between 1993 and 1997, Clemons would repeatedly make rude gestures toward her. She also testified she saw Dickman grab his crotch while looking at her one day as she distributed pay checks and that Clemons did so at the same time; however, it was apparently only Clemons' act which formed the basis of her second complaint to Gonzalez.
 {¶ 7} In February 2004, the trial court entered judgment adopting in toto the findings of fact and conclusions of law submitted by OBES. In doing so, the court held appellant failed to prove the alleged harassment was unwelcome where there was ample evidence that appellant was a willing participant in words and actions contributing to the environment she alleges was hostile. The trial court also adopted OBES's conclusion that the statute of limitations operated to bar her action based upon allegations which occurred between 1990 and 1993, and that the single documented allegation of harassment occurring in 1996 was not sufficient to establish the existence of a hostile environment. Thus, the trial court not only determined appellant failed to prove her case by a preponderance of the evidence, but also found she was time-barred from raising issue with most of the conduct of which she complained.
 {¶ 8} Appellant now raises the following assignments of error:
Assignment of Error No. 1
The trial court erred and abused its discretion in its ruling filed february 20, 2004, when it rendered judgment in favor of the defendant-appellee and against the plaintiff-appellant on her claim of sexual harassment as same was against the manifest weight of the evidence.
Assignment of Error No. 2
The trial court erred and abused its discretion in its ruling filed february 20, 2004, when it rendered judgment in favor of the defendant-appellee and against the plaintiff-appellant on her claim of intentional infliction of emotional distress as same was against the manifest weight of the evidence.
 {¶ 9} Appellant's first assignment of error charges the trial court's decision was against the manifest weight of the evidence where she submitted adequate evidence that she had complained to management about the conduct of co-workers Dickman and Clemons, that neither man had been disciplined for his acts, and that their conduct was ongoing and pervasive, serving to create a hostile work environment.
 {¶ 10} In determining whether a judgment is against the manifest weight of the evidence, we do not normally decide issues involving credibility, and we will not simply substitute our judgment for that of the trial court. Oleske v. Hilliard CitySchool Dist. Bd. of Edn. (2001), 146 Ohio App.3d 57, 64-65. When reviewing evidence presented in a bench trial, we defer to the findings of the trial judge who is best able to weigh credibility by viewing the witnesses and observing their demeanor. SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. We do not re-weigh evidence. In re Estate of Clapsaddle (1992),79 Ohio App.3d 747, 755. A judgment supported by some competent, credible evidence going to all the essential elements of the claims upon which it is rendered will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279, 280.
 {¶ 11} R.C. 4112.02(A) makes it an unlawful discriminatory practice "[f]or any employer, because of the * * * sex * * * of any person, * * * to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
 {¶ 12} In Hampel v. Food Ingredients Specialties, Inc.
(2000), 89 Ohio St.3d 169, the court set forth the elements of a cause of action for hostile environment sexual harassment. To prevail, the plaintiff must show:
* * * (1) [T]hat the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.
Id. at paragraph two of the syllabus.
 {¶ 13} In its conclusions of law, the court found that appellant had failed to present a prima facie case of harassment because the evidence clearly showed she had participated in and encouraged the workplace activity she now characterized as unwelcome, because the allegedly harassing conduct was not sufficiently severe or pervasive so as to affect the conditions of her employment, and because the evidence showed that, upon learning of her complaint, OBES took immediate and appropriate action to address the problem.
 {¶ 14} A hostile work environment is one which is so "permeated with `discriminatory intimidation, ridicule, and insult,'" that it "`alter[s] the conditions of the victim's employment and create[s] an abusive working environment.'" Harrisv. Forklift Systems, Inc. (1993), 510 U.S. 17, 21, quoting MeritorSavings Bank, FSB v. Vinson (1986), 477 U.S. 57. Courts have been careful to differentiate between work environments "so heavily polluted with discrimination as to destroy completely the emotional and psychological stability" of workers, Rogers v.Equal Employment Opportunity Commission (C.A.5, 1971),454 F.2d 234, 238, and those involving the "`"simple teasing," offhand comments, and isolated incidents'" typifying many work settings.Jarvis v. Gerstenslager, Wayne App. No. 02CA0047, 2003-Ohio-3165, at ¶ 42, quoting Faragher v. Boca Raton (1998), 524 U.S. 775.
 {¶ 15} In Bell v. Berryman, Franklin App. No. 03AP-500, 2004-Ohio-4708, at ¶ 57, this court recently reviewed a case alleging hostile environment sexual harassment, stating:
The conduct at issue must be "unwelcome" in that the plaintiff neither solicited it nor invited it and regarded the conduct as undesirable or offensive. See Meritor Sav. Bank, FSB v. Vinson
(1996), 477 U.S. 57, 68, 106 S.Ct. 2399 * * *. "The proper inquiry is whether [appellant] indicated by [her] conduct that the alleged harassment was unwelcome." Quick v. Donaldson Co.
(C.A.8, 1996), 90 F.3d 1372, 1378, citing Meritor, supra, at 68. * * *
 {¶ 16} Such cases require the trier of fact to decide whether, considering the record as a whole, the conduct was unwelcome. Meritor, at 69. Evidence regarding the plaintiff's own conduct is generally admissible, and may, in fact, be relevant to this determination. See Cline v. Electronic DataSystems Corp. (Sept. 18, 2000), Washington App. No. 99CA14;Meritor, at 69.
 {¶ 17} We agree with the trial court that appellant failed to establish by a preponderance of the evidence that the alleged instances of sexual harassment were unwelcome. Instead, the evidence demonstrated that, while the office atmosphere was at times sexually charged, much of it originated with Ripley. The credibility of her objections to co-workers' conduct was diminished by evidence that she kept a file of sexual jokes, freely exchanged jokes and stories of a sexual nature, made her sex life and her physical attributes a subject of general conversation, wore inappropriate clothing, and failed to rebuff the sexual advances of at least one male co-worker.
 {¶ 18} While, as appellant argues, participation in workplace conversations of a sexual nature does not necessarily defeat a claim for hostile environment sexual harassment, considering the totality of the circumstances in this case, evidence of appellant's participation in these conversations does tend to negate her claim that attention and comments from her male co-workers were unwelcome. It also undermines her argument that the alleged harassment was sufficiently severe or pervasive as to affect the terms, conditions, or privileges of her employment. After her second sexual harassment complaint in 1996, deriving from her allegation that Clemons had grabbed his crotch while looking at her, appellant testified that office manager Gonzalez did nothing; however, she admitted that there were no further problems from Clemons or Dickman after her complaint. The following exchange took place:
Q. From 1993 until you lodged your complaint with Mr. Gonzalez in 1996, were there still off-colored jokes, jokes of a sexual nature, being told in the Findlay OBES office?
A. Not that I know of.
Q. You submitted your resignation on February 7th, 1997, is that correct, from OBES?
A. Yes.
Q. You weren't fired?
A. No.
Q. Why did you feel the need to submit your resignation on that date from the defendant's facility in Findlay?
A. My health was more important than the job after 17 years. My diabetes was affected. I was seeking the help from a psychiatrist. I just couldn't handle it anymore. Seeing those two men every day of my life after years and years of this ongoing sexual harassment, I couldn't take it anymore. I cried. I missed a lot of work because I didn't want to be there. It was too much. I couldn't take it.
* * *
Q. Let me ask you this. After you lodged your verbal complaint to Mr. Gonzalez in 1996, did Mr. Dickman or Mr. Clemons engage in any type of inappropriate conduct towards you after that?
A. After '96?
Q. Correct. When you went into Oscar's office and said, hey, I want to complain again.
A. No.
(Tr. at 300-301.)
 {¶ 19} Thus, the evidence before the trial court indicates that, while there may have been numerous incidents of inappropriate office conduct about which appellant complained to OBES management in 1993, she admitted that the only objectionable incident she reported between 1993 and 1996 occurred when Clemons grabbed his crotch in her presence. This does not constitute harassment so pervasive that it would provide credibility to her claim that "years and years of * * * ongoing sexual harassment" had resulted in health problems forcing her to resign. (Tr. at 301.)
 {¶ 20} Regarding the statute of limitations, the evidence showed that the primary examples of harassment cited by appellant occurred during or before 1993, yet her complaint was not filed in the Court of Claims until 1997. As asserted by OBES, the applicable statute of limitations is contained in R.C. 2743.16, requiring causes of action to be filed within two years. Thus, the trial court would have been justified in only considering conduct allegedly occurring two years prior to the filing of her complaint. Although permitting testimony on conduct occurring between 1990 and 1997, the court adopted OBES's conclusions of law which stated, at ¶ 19:
Assuming arguendo, Plaintiff has proven a prima facie case of sexual harassment and intentional infliction of emotional distress, Plaintiff's claims are beyond the Court's two year statute of limitations where Plaintiff did not file her Complaint until November 28, 1997, over three years after her claims arose. * * *
 {¶ 21} We agree with this assessment, and find that the only sexual harassment complaint properly before the trial court derived from appellant's complaint to Gonzalez in 1996, that Clemons had grabbed his crotch in front of her. While this incident, if it did occur, can constitute evidence of sexual harassment, in this case it did not constitute the type of ongoing, severe or pervasive conduct which would support a claim that appellant's terms of employment were affected. Moreover, appellant admitted that, once she complained to Gonzalez, there were no further problems.
 {¶ 22} Thus, appellant's evidence fails in two key areas of the test for determining whether hostile environment sexual harassment has occurred: she neither demonstrated that the conduct of co-workers was unwelcome nor did she prove that the conduct was so severe or pervasive as to affect the terms of her employment. Given these shortcomings, we need not reach the additional questions of whether the harassment was based upon sex and whether OBES management adequately addressed her complaints. We simply hold that the trial court did not err in concluding appellant failed to present a prima facie case of hostile environment sexual harassment and so overrule appellant's first assignment of error.
 {¶ 23} Given our disposition of appellant's first assignment of error, we find her second assignment of error, alleging error by the court in rejecting her claim of intentional infliction of emotional distress, to be not well-taken. Thus, we overrule her second assignment of error.
 {¶ 24} Having overruled appellant's assignments of error, the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
Lazarus, P.J., and Bryant, J., concur.